**Anastasia KANDELL, Plaintiff-Appellant,**

**v.**

**RAYDELL PUBLISHING AND DISTRIBUTING CORPORATION, EMPLOYEES PENSION PLAN, Defendant-Appellee.**

No. 1092, Docket 77–7008.

United States Court of Appeals, Second Circuit.

Submitted May 25, 1977.

Decided June 22, 1977.

---

Herman Englander, New York City (Englander & Englander, New York City, of counsel), for appellant.

Milton I. Rothman, New York City (Walter Hofer, New York City, of counsel), for appellee.

Before FEINBERG and DANAHER,* Circuit Judges, and DOOLING,** District Judge.

* Of the District of Columbia Circuit, sitting by designation.

DOOLING, District Judge:

Irving Kandell and Raymond Lussa established a two-member qualified pension plan effective November 15, 1971. Irving Kandell died on December 9, 1974. The problem then presented was to determine the death benefit payable to his widow, the plaintiff. Plaintiff contended that the death benefit is 100 times 24.75% of the decedent's monthly rate of pay in the year of his death, that is, $4,750. times 24.75% (i. e., $1,175.62) times 100, or $117,562. Defendant says that the base pay to be taken into account is the same (24.75%) percentage of the average of the five highest of the most recent ten years of the member's pay rates, or $1,087.00 which, multiplied by 100, is $108,700. Since the plan had been "insured" to the extent of buying a $100,-000 policy of insurance on Kandell's life, and that policy has been paid, plaintiff sued for the remaining $17,562 and defendant tendered $8,700. The district court, properly, held for defendant.

The plan was embodied in an Adoption Agreement, amendments to the plan, and Prototype Pension Plan and Trust. Paragraph 10 of the Adoption Agreement, as amended, provided that the death benefit should be the full amount of any death benefit "payable under a Policy" plus the deceased's actuarially adjusted portion of the "Auxiliary Investment Fund"; but paragraph 10 continued, "In no event shall the death benefit be greater than would be provided if this was a Fully Insured Plan." Paragraph 4.06 of the Prototype Plan defines that provision. It provides that the amount of the pre-retirement death benefit (which is the one here involved) for an insured and regularly insurable plan member (and decedent was that) "under a Fully Insured Plan" is, in the case of a "defined benefit plan" (and this was one),

> "100 times the *anticipated monthly retirement benefit,* or the cash value under the Policy, whichever is greater" [emphasis added].

** Of the Eastern District of New York, sitting by designation.

The *underlined* words are the controversial ones.

Article IV of the Prototype Plan describes the plan's retirement and death benefits in terms of "monthly benefits." Paragraph 4.04 states that the participant's benefit at Normal Retirement Date shall be ". . . based on the average of his compensation for the highest five (5) consecutive years within a period of ten years preceding the fifth anniversary prior to his Normal Retirement Date."

While there are confusing references to the "Auxiliary Investment Fund" in the briefs and exhibits, it is, admittedly, not involved. (The Fund is described, and its rules of operation are set out, in Article XIII of the Prototype Plan; paragraph 13.-04(b) is the one invoked by the "actuarially adjusted" language.)

Plaintiff argues that since no actual retirement calculation is involved, the five year average is irrelevant, and the base year to be used should be the one expressing the earning level that the member had reached at moment of death. That is the one used in paragraph 4.05 calculations under the prototype plan; that paragraph provides for annually bringing the salaries used in plan calculations up to date (except that no adjustments in a participant's salary are to be made in his years 60 to 65). Defendant argues that no language in the plan papers authorizes that result, and that even paragraph 4.05 necessarily deals in a five-year calculation since it adjusts salaries only if the salary changes alter the "monthly pension" by $10.

Defendant seems plainly right. The "monthly retirement benefit" is that described in paragraphs 4.03 and 4.04 of the Prototype Plan, and the term "anticipated monthly retirement benefit" must be a notional retirement benefit calculated in the manner of an actual retirement benefit but, necessarily, using the latest data available. Plaintiff's argument could only be justified

on the theory that the plan assumed that salaries would always be on the increase and that it would therefore be fair to use the latest year alone. That, however, finds no support in the plan language, and it would impose on the fund a burden for which the actuarial determinations of the Plan (Prototype Plan paragraphs 4.05, 5.02(B)(a)(i), 7.01, 13.04) make no provision.

The judgment of the district court is affirmed.